Eleanor M. Lackman, Esq., No. 298594
*elackman@cdas.com*
COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD LLP
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394

Attorneys for Defendant
BILLY, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLY ELIZABETH JOVENALL, an individual, doing business as BILLY LOS ANGELES,<br><br>Plaintiff,<br><br>vs.<br><br>Billy, LLC, a New York limited liability Company, and DOES 1-9, inclusive,<br><br>Defendant(s). | Case No.: 17-cv-06860-DSF-PJW<br><br>**DEFENDANT BILLY, LLC's COUNTERCLAIMS** |

Defendant Billy, LLC ("Billy, LLC"), by its undersigned attorneys Cowan, DeBaets, Abrahams & Sheppard LLP, hereby counterclaims against Holly Elizabeth Jovenall ("Plaintiff"), as follows:

## NATURE OF THE COUNTERCLAIMS

1.    This is an action to cancel Plaintiff's improperly issued trademark registration (Reg. No. 5,258,760) (the "Registration") and for declaratory judgment of non-infringement and unenforceability of Plaintiff's "BILLY" trademark ("Plaintiff's BILLY Mark") based on false representations made by Plaintiff that her trademark is in use in commerce in connection with all of the goods listed in her trademark application, which were not corrected by her attorney, despite multiple opportunities to do so.  Additionally, Plaintiff was refused, and expressly disclaimed, registration for the clothing items she claims to sell and which are the basis of this lawsuit, namely, t-shirts, sweatshirts, sweatpants, and jackets.

2.    Specifically, Plaintiff alleges that Billy, LLC's use of the word "Billy!" in connection with the marketing and sale of Billy, LLC's clothing and jewelry is in violation of her federal trademark rights with respect to her Registration.  What Plaintiff omits, however, is that the Registration relies on patently false information – and is limited to adhesive pockets; arm, hand, and knee warmers; athletic sleeves; blindfolds; clothing pads; folk costumes; gags; gaiters; gloves; gussets; linings; maternity bands; puttees; sarongs; scarves; "thobes"; and underarm clothing shields – not clothing and accessories, as Plaintiff asserts in the Complaint.

3.    When initially filed, in April of 2016, Plaintiff's application sought protection in International Class 25 for numerous clothing-related items.  Following

DEFENDANT BILLY, LLC'S COUNTERCLAIMS

the issuance of an Office Action based, in part, on a Section 2(d) refusal and potential Section 2(d) refusal,[1] Plaintiff, with the assistance of recently-retained trademark counsel, amended her International Class 25 description to delete those potentially conflicting clothing items.  Plaintiff did this, apparently, after trying to disclaim the entire trademark, including a portion of the trademark that was not even in the application.

4.     After receiving another Section 2(d)-based Office Action, Plaintiff drastically narrowed her International Class 25 description, eliminating almost all clothing items except adhesive pockets; arm, hand, and knee warmers; athletic sleeves; blindfolds; clothing pads; folk costumes; gags; gaiters; gloves; gussets; linings; maternity bands; puttees; sarongs; scarves; "thobes"; and underarm clothing shields.

5.     While Plaintiff's website does appear to offer clothing featuring pockets, it is not at all apparent that they are stand-alone or "adhesive," nor does it appear that Plaintiff is using its BILLY Mark in commerce in connection with, for instance, gags, blindfolds, or maternity bands, despite Plaintiff's declaration to the Trademark Office that she is using her trademark "in commerce, on or in connection *with the identified goods and/or services* [in her application]."  In fact, the specimen included in the file

---

[1] Section 2(d) refers to a refusal to register based on the examiner's concern about potential likelihood of confusion between the applied-for mark and another pending applied-for or registered mark.  15 U.S.C. § 1052(d).

DEFENDANT BILLY, LLC'S COUNTERCLAIMS

for the Registration does not appear to show the Plaintiff's BILLY Mark on any goods whatsoever.

6.     The falsity of the representation that Plaintiff is using the BILLY Mark in commerce in connection with all of the goods identified in her amended application makes the Registration fraudulent and subject to cancellation in full.

7.     Plaintiff had an opportunity to correct the fraudulent statement more than once, including when Plaintiff filed the Office Action Response on February 8, 2017, and then again on March 9, 2017, and on March 30, 2017.  Despite three chances to do so, Plaintiff did not correct the fraudulent statement.

## THE PARTIES AND JURISDICTION

8.     Billy, LLC is a New York limited liability company with a principal place of business in New York County, New York.

9.     Plaintiff is an individual doing business as Billy Los Angeles, with a principal place of business in Los Angeles, California.

10.     This court has jurisdiction over the following counterclaims as they arise out of the same operative facts as Plaintiff's affirmative claims.

## FACTS

11.     Candice Pool, owner of Billy, LLC, is a New York-based jewelry designer and social media influencer.

12.     In 2006, Pool founded Finn Jewelry, an award-winning jewelry line

4

DEFENDANT BILLY, LLC'S COUNTERCLAIMS

featuring chic, feminine, high-end house-label necklaces, rings, and bracelets.

13.     In 2015, hoping to tap into a new demographic, Pool began developing a line of entry-level jewelry and initially sold one piece: a simple gold or silver necklace inspired by the scapular, a traditional Catholic necklace that features two square tags with portraits of Jesus and the Virgin Mary, but engraved instead with custom monograms and limited-edition phrases. Her goal was a simpler, more economical brand that would connect with a younger audience.

14.     The same year, Pool attended an anniversary party for the Billy Farrell Agency ("BFA") and had ironed letters on a t-shirt to spell out "Billy!"  This visual is what inspired her to use "Billy!" as the name of her new brand.  A true and correct copy of a photograph of Pool wearing the Billy! t-shirt at the BFA party, dated September 8, 2015, is attached as Exhibit A to this counterclaim.

15.     In June of 2016, Billy, LLC filed two applications with the United States Patent and Trademark Office ("USPTO") to register the trademark "Billy!" (the "Billy! Marks") for jewelry in International Class 14 and cotton tote bags, leather tote bags, cotton zip pouches, and leather zip pouches in International Class 18 — a word mark (Serial No. 87,078,980) and design mark (Serial No. 87,101,107).

16.     The USPTO issued suspension letters in connection with both applications due to pending applications that could present a bar to registration of the Billy! Marks, one of which included a reference to Plaintiff's then applied-for BILLY

Mark.

17.    Indeed, the market is saturated with trademarks containing the word Billy.  *See, e.g.,* U.S. Reg. Nos. 5,184,868 ("BILLY T") (registered in International Class 25 for, *inter alia*, blazers, blouses, hats. Jackets, shirts, sweatpants, sweatshirts); 5,026,826 ("BILLY GUNN") (registered in International Class 41 for entertainment services); 4,803,483 ("BILLY ELLA") (registered in International Class 25 for shoes); 4,488,876 ("BILLY BAD WEAR") (registered in International Class 25 for clothing and apparel, namely, shirts, t-shirts, sweatshirts and hats); and 3,134,172 ("BILLY LONDON") (registered in International Class 25 for men's suits, sport coats and pants).

18.    The following terms contained within dozens of live trademark applications and registrations exist at the USPTO in International Class 25, which encompasses clothing: GINGER BILLY; SWEET BILLY; BILLYBOOTS GET A GRIP; REAL BILLYS; B R BILLY RICH, BILLY O NAT; BILLY BIBS; BONNY BILLY; BILLYBOX; BILLY'S LIDS 4 KIDS; BILLY BOWLEGS; BILLY BAJA; BILLY JACK; BILLY JEALOUSY; SURFBILLY; BILLY BUOY; HILL BILLY; BILLY REID; BAYBILLY; BILLY TALENT; BILLYBALL; BILLY BLANKS; BILLY DEAN; BILLY GOAT; BILLY THE KID; BILLY BLUES; BILLY BOB'S; and several others containing "BILLY" for clothing and accessories.

19.    Additional live registrations exist at the USPTO for goods in the classes

6

for which Billy, LLC applied for "Billy!", including BILLY REID; BILLY WOLF; BILLY WORKS; BILLY JACK; B BILLY'S ENT; BILLY MARTIN'S; BILLY BLANKS; and BILLY ROYAL. Several additional live registrations are of record for retail store services featuring clothing, including BILLY BIBBY; BILLITO; and BILLIESMARKET.

20. Billy, LLC agreed to suspend the applications for the Billy! Marks because it believed that such marks, for jewelry and/or apparel, would be unlikely to mature to full registration given the crowded field and the fact that one of the cited marks – Plaintiff's BILLY Mark – did not appear to be in use for the cited goods or any competitive goods.[2] Plaintiff confirmed this conclusion in a statement on her website, which said: "2017 marks the departure from the private client, vintage based program launched in the Fall of 2015." The website described the prior exclusive styling service for artists, stylists and publications and noted that "small capsule collections" would be released starting in 2017. Plaintiff's website provides no indication that it has sold or intends to sell the products set forth in her Registration.

21. While Pool could have had better chances applying to register the Billy! Marks in connection with goods or services she did not intend to actually sell, she would never do so, as it would be unethical and a violation of the Trademark Manual

---

[2] After the lawsuit was filed, Billy, LLC's research uncovered only one reference of anything that might suggest sales of at least "token use" of branded clothing: the sale of some t-shirts in July of 2015 in a small, temporary Los Angeles location, according to an Instagram post that received 66 "likes."

of Examining Procedure, which states that an application "must include a statement that the mark is in use in commerce, verified in an affidavit or declaration under 37 C.F.R. §2.20 . . ."   37 C.F.R. § 2.20 provides, in relevant part:

> The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

22.   Over the past three years, Pool has invested substantial time and resources in developing and promoting the Billy! brand, which has been featured in various publications, including, but not limited to, *Vogue*, *Resource Magazine*, and on toryburch.com.

23.   Pool consistently updates the Billy! brand's various social media pages. Her husband, famous filmmaker and vlogger Casey Neistat, also features the Billy! brand on his social media accounts, which are viewed by his millions of Instagram followers and YouTube.com subscribers.

24.   Due to Pool's extensive promotion of the Billy! brand, as of January of 2018, Pool has amassed over 225,000 followers on the Billy! Instagram page.

25.   On information and belief, Plaintiff Holly Elizabeth Jovenall debuted her clothing line, Billy Los Angeles ("Billy Los Angeles"), in the fall of 2017.   A true and correct copy of the Billy Los Angeles Facebook.com page announcing its launch

is attached as Exhibit B to this counterclaim.

26.     Indeed, Plaintiff's website billylosangeles.com was registered shortly before the line's launch, in May of 2017.   A true and correct copy of the billylosangeles.com website's registration is attached as Exhibit C to this counterclaim.

27.     As of January of 2018, Billy Los Angeles has fewer than 6,000 Instagram followers, as compared to the Billy! brand's 225,000 followers.   A true and correct copy of the Billy Los Angeles Instagram page is attached as Exhibit D to this counterclaim.

28.     On information and belief, prior to 2017, Plaintiff's brand was used in her capacity as owner of a private client, vintage based program catered to high-end male clients, launched in the Fall of 2015.  *See* Exhibit B, the Billy Los Angeles Facebook.com page.

29.     The concept behind Billy, LLC's brand is that Billy!-branded products are accessible to the average buyer, with silver necklaces for women starting at only $180 and t-shirts starting under $40.  In contrast, the products that Plaintiff presently offers range from $120 to $180 for basic t-shirts, $280-$320 for sweatshirts and hoodies, and between $750 and $2400 for jackets.

30.     On information and belief, presumably seeking to register Plaintiff's BILLY Mark in connection with Plaintiff's private styling service, Plaintiff filed an

application with the USPTO in April of 2016, seeking protection for numerous clothing items in International Class 25.  A true and correct copy of Plaintiff's initial application is attached as Exhibit E to this counterclaim.

31.     Following the issuance of an Office Action based, in part, on a Section 2(d) refusal and potential Section 2(d) refusal on the ground that Plaintiff was not entitled to trademark ownership of BILLY for the applied-for goods, Plaintiff amended her International Class 25 description to delete those potentially conflicting clothing items.  A true and correct copy of Plaintiff's February 8, 2017 Response to the Office Action is attached as Exhibit F to this counterclaim.

32.     Plaintiff did this after trying to disclaim the entire trademark, including a portion of the trademark that was not even in the application.

33.     After receiving another Section 2(d)-based office action and hiring counsel, Plaintiff drastically narrowed her International Class 25 description, eliminating almost all clothing items except:

> Clothing items, namely, adhesive pockets that may be affixed directly to the body as a decorative piece of clothing with utility; Clothing items, namely, adhesive pockets that may be affixed directly to the inside of clothing for storage and safekeeping of personal items; Clothing items, namely, blindfolds worn over the eyes; Clothing items, namely, gags worn over the mouth; Clothing shields, namely, pads applied to the underarms of shirts, blouses and sweaters; Clothing, namely, arm warmers; Clothing, namely, athletic sleeves; Clothing, namely, cowls and smoke ring scarves; Clothing, namely, folk costumes; Clothing, namely, hand-warmers; Clothing, namely, knee warmers; Clothing, namely, maternity bands; Clothing, namely, neck tubes; Clothing, namely, neck warmers; Clothing, namely, thobes;

Clothing, namely, wrap-arounds; Gloves with conductive fingertips that may be worn while using handheld electronic touch screen devices; Parts of clothing, namely, gussets for tights, gussets for stockings, gussets for bathing suits, gussets for underwear, gussets for leotards and gussets for footlets; Parts of clothing, namely, underarm gussets; Pockets for clothing; Puttees and gaiters; Ready-made linings being parts of clothing; Sarongs; Underarm clothing shields.

A true and correct copy of Plaintiff's Second Office Action Response, dated March 9, 2017, is attached as Exhibit G to this counterclaim.

34.     Plaintiff further declared that she had been using Plaintiff's BILLY Mark "in commerce, on or in connection *with the identified goods and/or services* [in her application]" since August of 2015.   *See id.*, Plaintiff's Second Office Action Response (emphasis added).

35.     On information and belief, Plaintiff has never sold, and does not currently sell, any of the good or services listed in her registration.  While Plaintiff's website, which despite its purportedly long existence shows just seven apparel items for sale (two hats, three t-shirts, and two pants) and twelve apparel items for "pre-order," does appear to offer clothing featuring pockets, it is not at all apparent that they are "adhesive," nor does it appear that Plaintiff is using the BILLY Mark that is the subject of her Registration in commerce in connection with, for instance, gags worn over the mouth, blindfolds, or maternity bands, despite Plaintiff's declaration to the USPTO that she is using the BILLY Mark "in commerce, on or in connection *with the identified goods and/or services* [in her application]."  A true and correct copy of

screenshots of Plaintiff's website are attached as Exhibit H to this counterclaim.

36.    Furthermore, the specimen included in the file for Plaintiff's registration does not appear to show the mark in use in commerce in connection with the sale or offering for sale of any goods.  *See* Exhibit E, Plaintiff's Initial Application.

37.    On information and belief, the USPTO reasonably relied on Plaintiff's false statements in granting registration, and would not have granted such registration had Plaintiff's false statements been brought to light.

38.    Plaintiff, and her attorney, had multiple opportunities to correct the fraudulent statements, including when Plaintiff filed the Office Action Response on February 8, 2017, and then again on March 9, 2017, and on March 30, 2017.

39.    Despite three chances to do so, Plaintiff did not correct the fraudulent statements.  Indeed, each contact to the USPTO willfully affirmed and perpetuated the fraud that Plaintiff and her counsel were committing on the USPTO in order for Plaintiff to obtain whatever she possibly could in International Class 25 regardless of whether she ever sold any such products or ever had the intention to sell any such products described in the application.

40.    On information and belief, given the crowded field for marks containing the word "Billy," as evidenced by the numerous registered marks referenced in this counterclaim, as well as the prosecution difficulties in Plaintiff's trademark application (*see* the file wrapper for Serial No. 87,009,997, and accompanying office

actions dated August 8, 2016 and February 14, 2017), there is no likely confusion between Plaintiff's gags, blindfolds, gussets, and underarm shields, etc., and Billy, LLC's t-shirts and jewelry.

41.    Plaintiff has never used any distinctive punctuation with its name, as Billy, LLC does with its consistent, prominent use of "Billy!".

42.    Nor is there any likely confusion between Billy, LLC's Billy!-branded jewelry and bags, which were put into the market under the website lovebilly.com prior to Plaintiff offering any such items.  Given the minimal amount of token-use, if any use, by Plaintiff of the word "Billy" as a trademark on t-shirts, and the timing of such use, it is unlikely that Plaintiff has superior rights in the term "BILLY" as compared to Billy, LLC's use of "Billy!".   And, given Plaintiff's fraudulent statements to the USPTO, she should not be deemed as a matter of law to have any rights to enforce against Billy, LLC.

43.    Moreover, and perhaps tellingly, Plaintiff did not reach out to Billy, LLC regarding Billy, LLC's public use of the term "Billy!" for nearly two years after Billy, LLC's visible use and rapidly growing following.   After Plaintiff did so, she demanded that Billy, LLC take steps that included turning Billy, LLC's highly successful social media accounts over to Plaintiff.

44.    Both the public and Billy, LLC have been, and will continue to be damaged by Plaintiff's fraud.   Billy, LLC faces litigation from Plaintiff asserting

infringement of the BILLY Mark and others who would like to sell clothing using the word "Billy" will likely be enjoined due to Plaintiff's fraudulent registration.

## CLAIMS FOR RELIEF

## COUNT I

## PETITION TO CANCEL PLAINTIFF'S REGISTRATION BASED ON FRAUD

45.     Billy, LLC incorporates the allegations of Paragraphs 1 through 44 of its counterclaims above as if restated herein.

46.     When the application for Plaintiff's BILLY Mark was initially filed, the application sought protection in International Class 25 for numerous clothing-related items, including, but not limited to, tops, shirts, t-shirts, tank tops, hats, and athletic-wear.

47.     Following the issuance of an Office Action refusing registration of her application based on a Section 2(d) likelihood of confusion, Plaintiff engaged trademark counsel, who amended her International Class 25 description to attempt to delete clothing items similar to those covered by the blocking registration.

48.     After receiving another Section 2(d)-based office action, Plaintiff, with the collaboration of counsel, further amended her application by drastically narrowing her International Class 25 description, eliminating almost all clothing items *except* adhesive pockets; arm, hand, and knee warmers; athletic sleeves; blindfolds; clothing pads; folk costumes; gags; gaiters; gloves; gussets; linings; maternity bands; puttees;

14

1   sarongs; scarves; "thobes"; and underarm clothing shields.

2      49.   In her second amended application, Plaintiff falsely declared that she had

3   been using the BILLY Mark "in commerce, on or in connection *with the identified*

4   *goods and/or services* [in her application]" since August of 2015.

5

6      50.   On information and belief, this representation is false, as Plaintiff has

7   never sold, and does not currently sell, the goods listed in her amended application.

8   Rather, Plaintiff sells tops, shirts, t-shirts, tank tops, hats, and athletic-wear, which

9   were expressly eliminated from her application for registration of Plaintiff's BILLY

10   Mark.

11

12      51.   Upon information and belief, Plaintiff made these false representations to

13   the USPTO because she knew that a registration would not be granted – indeed, was

14   expressly refused – for the goods and services she actually sells.   In other words,

15   Plaintiff is aware that the USPTO does not believe she has superior rights in the term

16   BILLY for clothing and accessories.

17

18      52.   This is evidenced by the prosecution difficulties faced by Plaintiff in

19   obtaining her trademark registration, and the fact that Plaintiff was required to narrow

20   the scope of clothing items numerous times.

21

22      53.   After amending her application a second time, Plaintiff requested that the

23   Examining Attorney withdraw the Section 2(d) Refusal and register the mark for the

24   limited goods not refused.

25

26

27

28

15

54.     The second amended application was signed by Plaintiff's attorney, Daniel M. Cislo, Esq.

55.     On information and belief, Respondent's false statements were made with the intent to induce the USPTO to grant registration in Plaintiff's BILLY Mark (and to later enjoin others from using the term "Billy" on clothing-related items). The USPTO, reasonably relying upon the truth of those false statements did, in fact, grant registration in Plaintiff's BILLY Mark.

56.     Plaintiff obtained the registration of the BILLY Mark fraudulently, in that the description of goods and services set forth in the application for registration differs from the goods and services Plaintiff currently offers and offered at the time it applied for the trademark registration and Plaintiff falsely represented that she had been using Plaintiff's BILLY Mark "in commerce, on or in connection *with the identified goods and/or services* [in her application]" since August of 2015.

57.     On information and belief, Plaintiff knew or should have known that this declaration was false and that she had not actually been selling stand-alone hygienic and storage components of clothing and what appears to be S&M gear, as she claimed in her application.

58.     Even a cursory review of Plaintiff's website demonstrates that she sells t-shirts, sweatshirts, hats, and other leisure-wear, albeit in a limited range. *See* Exhibit H, Screenshots of Plaintiff's website.

59.     Billy, LLC believes that it has been damaged and will continue to be damaged by the registration of Plaintiff's BILLY Mark, including by the assertion of legal claims based on Plaintiff's purported rights in the mark, such as the one in the instant proceeding.

60.     Accordingly, Plaintiff's Registration must be cancelled pursuant to Section 14 of the Lanham Act, 15 U.S.C. § 1064.

## COUNT II

### DECLARATORY JUDGMENT THAT PLAINTIFF'S MARK IS UNENFORCEABLE

61.     Billy, LLC incorporates the allegations of Paragraphs 1 through 60 of its counterclaims above as if restated herein.

62.     Plaintiff's BILLY Mark is unenforceable on the ground that it was obtained through fraud against the USPTO and thus should be cancelled pursuant to 15 U.S.C. § 1064.

## COUNT III

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT

63.     Billy, LLC incorporates the allegations of Paragraphs 1 through 62 of its counterclaims above as if restated herein.

64.     Plaintiff's BILLY Mark is unenforceable, as it was obtained through fraud against the USPTO and thus should be cancelled pursuant to 15 U.S.C. § 1064.

65.     Furthermore, and in the alternative, Billy, LLC pleads that it is not

infringing Plaintiff's BILLY Mark because: (1) the scope of Plaintiff's rights at the time Billy, LLC adopted its Billy! mark were limited; (2) the trade channels, pricing, and consumers for Plaintiff's and Billy, LLC's products are significantly different; and/or (3) use of the term "Billy!" in an ornamental sense is not trademark infringement.

66.    Billy, LLC is entitled to a declaration of non-infringement, resulting from the unenforceability of and/or limited scope of rights in Plaintiff's claimed BILLY Mark.

//

//

//

//

//

//

//

//

//

//

//

/

DEFENDANT BILLY, LLC'S COUNTERCLAIMS

## PRAYER FOR RELIEF

WHEREFORE, Billy, LLC respectfully requests that it be awarded judgment as follows:

1.      In favor of Billy, LLC and against Plaintiff on all of Plaintiff's claims;

2.      In favor of Billy, LLC and against Plaintiff on Billy, LLC's counterclaims;

3.      Ordering the Director of the USPTO to cancel the Registration, and to make appropriate entries upon the USPTO's records to reflect such action;

4.      Awarding Billy, LLC its reasonable attorney's fees, costs expenses, and interest; and

5.      Awarding Billy, LLC such other and further relief as the Court deems just and proper.

Dated:  January 16, 2018

COWAN DeBAETS ABRAHAMS
& SHEPPARD, LLP

By:  /s/Eleanor M. Lackman
     Eleanor M. Lackman, Esq.

Attorneys for Defendant,
BILLY, LLC